## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANDREW LANDRY, individually and on behalf of all others similarly situated**<br>　　**Plaintiff**<br><br>**v.**<br><br>**PRIORITY 1 AIR RESCUE OPERATIONS, ARIZONA LP**<br>　　**Defendant** | **DOCKET NO. 2:15-cv-6979-JTM-SS**<br><br>**JUDGE JANE TRICHE MILAZZO**<br><br>**MAGISTRATE JUDGE SALLY SHUSHAN** |

## JOINT MOTION FOR STIPULATED JUDGMENT PRELIMINARILY APPROVING SETTLEMENT AND RELEASE AGREEMENT

COME NOW Plaintiffs and Defendant (collectively the "Parties"), by and through their respective undersigned counsel, and hereby file this Joint Motion for Stipulated Judgment Approving Settlement and Release Agreement.  In support of their joint motion, the Parties state as follows:

### STATEMENT OF FACTS AND SUMMARY OF PROCEEDINGS

This is an overtime collective action under the Fair Labor Standards Act ("FLSA").  Plaintiffs, who previously and currently work(ed) for Priority 1 Air Rescue Operations, Arizona LP ("Priority" or "Defendant") in one or more work weeks under the job titles of "Paramedic," "Hoist Operator," "Rescue Swimmer" or other personnel providing air ambulance services sued Defendant alleging the claim of failure to pay overtime compensation for hours worked under the FLSA.

Defendant denied liability.  The Parties agreed to settle the case and now request this Court's entry of a stipulated judgment approving the settlement agreement.

A.    <u>Pleadings and Early Settlement Discussions</u>.

The claims in this case have been intensely investigated by counsel for Defendant since the Complaint was filed on December 22, 2015.  In addition, counsel for both parties met in person on January 22, 2016 to discuss the facts of this case as well as the applicable law.  At that meeting, the Parties agreed to engage in an early exchange of information in order to facilitate a possible settlement of the case.

B.    <u>Settlement</u>

Following the January 22, 2016 meeting, counsel for Plaintiffs and Defendant exchanged information relating to the pay and hours worked of Plaintiff and the putative class members.  Counsel also exchanged a series of emails and attended multiple calls discussing the terms of a potential resolution of this case.  On February 10, 2016, the Parties reached a settlement as to all claims in the litigation, including all claims encompassed by Plaintiffs' Complaint filed on December 22, 2015.  The Parties then executed a Settlement Agreement and Release (the "Agreement") that memorializes the terms of the settlement.  The

Parties agreed that they would submit this Joint Motion for Approval to this Honorable Court requesting the Court's preliminary approval of the Agreement.

## ARGUMENT AND CITATION OF AUTHORITY

In this Circuit, while court approval may not be required, the Parties are seeking approval of their settlement agreement because Plaintiffs' claims arise under the FLSA. *See* 29 U.S.C. § 216; *Aguirre v. S&B Eng'rs & Constructors, Ltd.*, 2015 U.S. Dist. LEXIS 159288 (E.D. Tex. Nov. 18, 2015) (citing *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)); *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947). "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Accordingly, the Parties are submitting a copy of the Agreement for the Court's review, ratification, and approval. A copy of the fully executed Agreement is attached hereto as Exhibit A, and a proposed Order entering the stipulated judgment approving the Agreement is attached hereto as Exhibit B.

In order to approve a settlement of overtime claims proposed by an employer and an employee, a court must determine that the settlement reflects a "reasonable compromise over issues." *Aguirre*, 2015 U.S. Dist. LEXIS 159288,

*8.  The Fifth Circuit has stated that a private compromise of claims under the FLSA is permissible where there exists a bona fide dispute as to liability.  *Martin v. Spring Break '83 Productions*, 688 F.3d 247, 255 (5th Cir. 2012).

# I.   APPROVAL OF PAYMENTS TO PLAINTIFF AND PUTATIVE CLASS MEMBERS

There is a strong presumption in favor of finding a settlement fair.  *See Sierra v. E.M.S.P., LLC*, 2015 U.S. Dist. LEXIS 136227 (E.D. La. Oct. 5, 2015) (stating that the Court must remain aware that a settlement is a compromise, a yielding of highest hopes for certainty and resolution).  Although Rule 23 of the Federal Rules of Civil Procedure does not control FLSA collective actions, many courts have adopted some of Rule 23's procedures for assessing the fairness of an FLSA settlement. *See Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 722 (E.D.La. 2008) (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)). Courts accordingly consider the following when assessing a proposed settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members.  *See Collins*, 568 F.Supp.2d 714, 722 (E.D.La. 2008).  As set forth below, examination

of each of the applicable factors shows that the terms of the Agreement are fair, adequate, and reasonable and should be approved by the Court.

    1.  <u>The Possible Existence of Collusion</u>.

    Defendant contends that Plaintiffs were properly paid for all of their hours of work under the FLSA. Nonetheless, the Parties exchanged their respective valuations of potential damages if Plaintiffs were to succeed in proving FLSA liability in this case based on Plaintiffs' reported hours of work under both a two and three year statute of limitations. The Parties made their respective calculations of potential liabilities based on the results of the potential outcomes and Defendant's pay records that were shared with Plaintiffs for purposes of the settlement negotiations.

    As set forth above, the Parties engaged in extensive and continued settlement negotiations before ultimately reaching an agreement to settle the case. Thus, the settlement in this case is the ultimate result of arms-length negotiations by Parties who were well represented by counsel and made aware of all potential outcomes.

    The Parties' Settlement reflects approximately four percent more than each class member's recovery of their allegedly unpaid half time for a two year statute of limitations period. In addition, the Settlement includes an additional $10,000

payment to Andrew Landry as the Named Plaintiff.  These settlement values are exclusive of fees and costs and were negotiated prior to the Parties even discussing attorney's fees and costs.

Under the terms of settlement (if approved), the 45 putative class members would share, for their overtime claims, the total gross amount of $450,000 as follows:

- o Lane Abshire: $9,489.78
- o Ryan Andrews: $16,632.56
- o Derrick Ansley: $1,871.44
- o Dustin Bernatovich: $12,663.51
- o Lukas Boyd: $3,222.78
- o Ashley Burke: $12,525.62
- o Dan Cancetty: $3,774.91
- o Jay Caskey: $14,372.23
- o Lenny Cunningham: $14,435.94
- o Clarence Darby: $14,540.50
- o Luc Deffense: $10,923.10
- o Troy Delahoussaye: $13,423.17
- o Patrick Estrada: $11,254.33
- o Greg Farney: $9,788.54
- o Alex Farnsworth: $5,381.89
- o Richard Forbes: $7,978.97
- o Jamie Force: $3,525.74
- o Chris Fowler: $12,866.02
- o Mike Guidice: $340.45
- o Danny Hoffmeier: $3,522.92
- o Jon Inman: $4,229.10
- o Kelly King: $5,071.06
- o Andrew Landry: $24,509.20
- o Ebin Latrimurti: $3,282.06
- o Brian Laubenstein: $19,162.45
- o Joe Martin: $9,499.46

- o Tim McClanahan: $1,279.82
- o Claude Morrissey: $2,205.38
- o Lyle Odell: $10,599.24
- o Craig Potts: $13,439.03
- o Aaron Pounds: $15,830.73
- o Jason Quinn: $10,536.38
- o Jesse Reighard: $14,138.74
- o Kurt Revels: $8,216.32
- o Jason Segal: $21,373.36
- o Jon Shipps: $5,871.64
- o Dustin Skarra: $17,837.59
- o Leroy Skinner: $7,588.81
- o Mike Steinbach: $4,718.20
- o Justin Stiehl: $11,995.45
- o Harry Tate: $12,222.87
- o Brian Tharp: $3,808.30
- o Brice Twombly: $13,706.45
- o Roger Wilson: $12,141.83
- o Andrew Yost: $14,202.14

The Parties calculated the amount of each putative class member's distribution based on their actual hours of work and pay records for the two years prior to the filing of the Complaint, plus an additional four percent, plus $10,000 for Named Plaintiff Landry.

Defendant denies any liability under the FLSA and denies that Plaintiffs are entitled to any recovery in this lawsuit; however, without admitting liability and solely for the purposes of avoiding ongoing costs of litigation, Defendant has agreed to make the settlement payments reflected in the Agreement.

Additionally, Priority has agreed as part of the settlement to reclassify all of

the jobs at issue in this case and pay overtime for all hours worked over 40 per week,

All of the above establish that this settlement was reached by arms-length negotiations without collusion by or on behalf of any parties.

2. <u>The Complexity, Expense, and Likely Duration of the Litigation</u>.

The Agreement allows Plaintiffs to take a substantial recovery now, without suffering the delay and risk of litigating the claims.  In this case, further litigation including discovery disputes on issues involving attorney-client and work product privilege and anticipated proceedings on motions to compel, depositions, opposing a decertification motion by Defendant, anticipated cross-motions for summary judgment, and appeals could drag on for years and require the expenditure of a tremendous amount of resources.  Fees and costs would only have continued to increase for both sides if the case had not settled.

3. <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>.

In this case, the Parties exchanged informal pay and time records for purposes of trying to settle the case.  Defendant also spent substantial resources investigating the claims in Plaintiffs' Complaint as well as possible defenses to FLSA liability, including potentially-applicable exemptions and offsets.  Plaintiffs would have requested production of significant discovery had the case not settled,

including significant e-discovery.  Plaintiffs' counsel interviewed witnesses and prepared for the filing of their Complaint and potentially drawn-out litigation.  As a result of these efforts, the Parties have had sufficient information upon which to assess the potential merit of each claim, ultimate liability, and the apparent risk of proceeding to trial.

    4. <u>The Probability of Plaintiffs' Success on the Merits</u>.

Defendant asserts throughout this litigation that Plaintiffs were not entitled to overtime compensation because they were exempt from the overtime requirements of the FLSA and not entitled to any additional overtime payments. Additionally, disputes exist as to the calculation of overtime damages.  Thus, Defendant disputes whether Plaintiffs would be entitled to any overtime compensation at all, much less in the amounts claimed.  The Parties therefore disagree on the likelihood of Plaintiffs' success on the merits.

    5. <u>The Range of Possible Recovery</u>.

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As summarized above, the Parties dispute the amount of damages to which Plaintiffs would be entitled even if Defendant did not prevail on its defenses.  First, Defendant contends that Plaintiffs were exempt under the Railway Labor Act. Second, Defendant contends that even if Plaintiffs are non-exempt, they already paid Plaintiffs for overtime through their salaries.   Under Defendant's calculation methodology, Defendant's overtime liability is only the additional half-time payment at the hourly rate determined by dividing Plaintiffs' weekly salary by the number of hours worked that week.  The Parties used this calculation of overtime as a compromise for purposes of determining the settlement value even though Plaintiffs contend that Defendant's half-time payment method of calculation does not apply because Plaintiffs' salary was not intended to compensate them for all hours worked.  Defendant disagrees with this position.

Next, regarding Plaintiffs' claim for liquidated damages in an amount equivalent to overtime damages under Section 216(b) of the FLSA, Defendant contends that this Court should deny or reduce liquidated damages based on the "good faith" defense, relying on the Company's belief that the Plaintiffs were exempt and even if they were not exempt, that their salaries paid them for overtime.  Plaintiffs contend that Defendant cannot prove its good faith defense and avoid the imposition of liquidated damages under the FLSA.

The range of possible recovery would also be reduced if the Plaintiffs were unable to prove that Defendant's alleged violation of the FLSA was "willful," as required in order to extend the statute of limitations for recovery from two to three years preceding the date Plaintiffs filed their respective claims in this civil action by either filing a Complaint or filing an Opt-In Consent form.  As evidence to counter the accusation that it was "willfully" violating the FLSA, Defendant expected to point again to the Company's belief that the Plaintiffs were exempt and even if they were not exempt, that their salaries paid them for overtime.

The settlement therefore provides a reasonable compromise of individually calculated overtime damages.

6. <u>Counsels' Opinions</u>.

Based on what the Parties learned through their investigations and informal discovery, from witness interviews, and from extensive research and investigation, the Parties negotiated a fair settlement for the Plaintiffs.  By settling, Plaintiffs avoid the risks of not establishing liability at trial and the possibility of an adverse cost judgment under Fed. R. Civ. P. 54, avoid substantial and indefinite delay in payment involved in having to wait for trial and any appeals, and avoid potential adverse determinations on the damages issues outlined above.  Plaintiffs' counsel

therefore recommended acceptance of this settlement and represents herein that the settlement is fair, beneficial, and equitably allocated among the settling Plaintiffs.

As part of the settlement, Plaintiffs also affected a change in Defendant's classification.  Prospectively, Defendant will classify Plaintiffs as non-exempt and pay them overtime for all hours worked over 40 per week under fluctuating workweek agreements with each employee.  Accordingly, Plaintiffs will now be entitled to overtime payments for all hours worked over 40 per week going forward.

## II.    APPROVAL OF PAYMENT OF ATTORNEYS' FEES[1]

The Agreement provides that Defendant shall pay Plaintiffs' costs and attorneys' fees in the amount of $150,000 (comprising a 33% contingent fee on the $450,000 class settlement).  Plaintiffs' counsel's requested 33% contingent fee represents a REDUCTION from the written representation agreement between Plaintiffs' counsel and Named Plaintiff Andrew Landry, which provided for a 40% contingent fee.  This is Plaintiffs' counsels' standard contingent fee for matters resolved during litigation. Plaintiffs' counsel and Named Plaintiff Andrew Landry agreed on the contingent fee percentage in a written agreement at the outset of the representation.  By representing the collective on a contingent fee basis, and by

---

[1] Defendant does not oppose Plaintiffs' request for approval of payment of attorney's fees.

seeking an award of the (now discounted) agreed upon contingent fee rather than an hourly-based lodestar fee the payment of which Plaintiffs would have had to negotiate with Defendant, Plaintiffs' counsel entirely avoided the potential conflict that can arise if the plaintiffs' attorney negotiates with the Defendant for the collective fund and counsel's fees at the same time.  The contingent fee agreement enabled Plaintiffs' counsel and Named Plaintiff Landry to focus their negotiating efforts solely on obtaining the best possible total recovery for the collective without any concern about the conflicts that can arise when negotiating with the defense over both the class fund and counsel's fees.

The Fair Labor Standards Act ("FLSA") requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiff, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *See Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n. 18 (5th Cir. 1979). The Supreme Court has held that a party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought."  *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).  In the instant action, Plaintiffs stand to recover a favorable settlement payment, one that is well in excess of the amounts to be

awarded even if Plaintiffs recovered the full amount of overtime hours claimed but Defendant succeeded on its half-time payment calculation.  Thus, Plaintiffs are entitled to payment of their attorneys' fees and costs in this action by Defendant in the amount stated in the Agreement.

The settlement in this case involved a "clear sailing" agreement on attorneys' fees and litigation expenses, by which the Parties agreed that the settlement was fair and equitable, and Defendant agreed not to oppose Plaintiffs' request for approval of the payment of fees and expenses to Plaintiffs' counsel in the specific amounts stated in the Agreement.  *See Waters v. International Precious Metals Corp*., 190 F.3d 1291, 1293 n. 4 (11th Cir. 1999) (discussing "clear sailing" agreements).  The parties agreed to this provision as part of arms-length negotiations.  Federal courts have made clear that these "clear sailing" agreements are commonplace and proper in settling this type of case.  *See, e.g*., *Malchman v. Davis*, 761 F.2d 893, 905 at n.5 (2d Cir. 1985) ("But where, as here, the amount of the fees is important to the party paying them, as well as to the attorney recipient . . . an agreement 'not to oppose' an application for fees up to a point is essential to completion of the Settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged."); *see also*, *Bragg v. Bill Heard Chevrolet, Inc.-Plant City*, No. 8:02-

CV-609-T-30 EAJ, 2006 U.S. Dist. LEXIS 60938, *13 (M.D. Fla., Aug. 28 2007) (approving $650,000 fee application with "clear sailing" agreement as to fee amount).  Further, where, as here, the total settlement fund includes Defendant's liability for fees and costs under 29 U.S.C. §216, the fees and costs cannot be strictly viewed as a deduction from the plaintiffs' award, as is the case in a common fund collective action settlement.

Plaintiffs' counsel's requested fees are reasonable and justified.  First, the results justify the fees.  Every plaintiff will receive a fair settlement distribution. Additionally, Priority has agreed as part of the settlement to reclassify all of the jobs at issue in this case and pay overtime for all hours worked over 40 per week, meaning that Plaintiffs' counsel obtained the maximum possible class-wide prospective relief.  Second, the risk justifies the fees.  Plaintiffs' counsel took on this case with no assurance of payment, no way of knowing how many people would join if the case were certified and therefore no idea of the potential value of the case, and no way of knowing how long the case might have to be litigated before payment came (if it came at all).  Third, necessity justifies the fees.  None of the plaintiffs could afford to pay for lawyers by the hour.  A contingent fee agreement was the only means by which they could secure representation.  Fourth, industry standard supports the fee.  Plaintiffs' counsel each specialize in plaintiffs'-

side employment work and, to their knowledge, their contingent fee is industry standard.  Fifth, Plaintiffs' counsels' work justifies the fee requested. Plaintiffs' counsel invested substantial time and effort in the case, all without any assurance of payment.   Among other things, Plaintiffs' counsel: quickly filed and investigated the action, worked with Priority's counsel to reach damages calculations that actually reflected their hours worked rather than just estimates, and fully prepared to press forward with class-wide discovery had settlement talks failed.

For all of these reasons, Plaintiffs' counsel respectfully requests, and Priority does not oppose, that the Court award Plaintiffs' counsel total fees and costs of $150,000.

## **CONCLUSION**

For the reasons set forth above and for good cause shown, the Parties respectfully request that this Court enter the Order attached hereto as Exhibit B approving the Agreement (attached hereto as Exhibit A) by stipulated judgment.

Respectfully submitted this 4th day of March, 2016.

Respectfully Submitted:

**RHORER LAW FIRM**

*/s/ Alexander T. Reinboth*
S. Bradley Rhorer (No. 25487) (T.A.)
Alexander T. Reinboth (No. 34048)
10566 Airline Highway
Baton Rouge, LA 70816
Telephone: (225) 292-2767
Facsimile: (225) 292-2769
bradr@rhorerlaw.com
alexr@rhorerlaw.com


-and-

**ESTES DAVIS LAW, LLC**

Daniel B. Davis (No. 30141)
Randall E. Estes (No. 22359)
850 North Boulevard
Baton Rouge, LA 70802
Telephone: (225) 336-3394
Facsimile: (225) 384-5419
dan@estesdavislaw.com
randy@estesdavislaw.com

*Attorneys for Plaintiff Andrew Landry*

*s/ Charles F. Seemann III*
Charles F. Seemann III (#23933)
charles.seemann@jacksonlewis.com
**JACKSON LEWIS P.C.**
650 Poydras Street, Suite 1900
New Orleans, Louisiana 70130
Telephone: (504) 208-1755
Facsimile: (504) 208-1759


-and-

Eric R. Magnus (admitted *pro hac vice*)
Georgia Bar No. 801405
1155 Peachtree Street N.E.
Suite 1000
Atlanta, GA 30309
Telephone: (404) 525-8200
Facsimile: (404) 525-1173
MagnusE@jacksonlewis.com

*COUNSEL FOR DEFENDANT, PRIORITY 1 AIR RESCUE OPERATIONS, ARIZONA LP*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the parties. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants.

*/s/ Alexander T. Reinboth*
Alexander T. Reinboth